IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DONA ANDREA LLC, an Illinois limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> ASCLEPIUS LABORATORIES, INC., a Delaware corporation, f/k/a PARCELL LABORATORIES INC., STAN MANOOGIAN, JAMES BRIGHAM, JOHN LEVITT, KEITH CRAWFORD, GEOFF MACKAY, and JOHN MISCHA PETKEVICH, <br><br> Defendants. | Case No. 2019-cv-6562 |

## COMPLAINT

Plaintiff, DONA ANDREA LLC (herein "DONA ANDREA"), by and through its attorneys, Litchfield Cavo LLP, states as follows as its Complaint against the Defendants, ASCLEPIUS LABORATORIES, INC. (herein after "ASCLEPIUS"), STAN MANOOGIAN (herein "MANOOGIAN"), JAMES BRIGHAM (herein "BRIGHAM"), JOHN LEVITT (herein "LEVITT"), KEITH CRAWFORD (herein "CRAWFORD"), GEOFF MACKAY (herein "MACKAY"), and JOHN MISCHA PETKEVICH (herein "PETKEVICH") (collectively, the "Defendants"):

## PARTIES

1. Plaintiff, DONA ANDREA, is a limited liability company incorporated in Illinois. At all relevant times, Michael Board was the sole owner of DONA ANDREA.

2. Defendant ASCLEPIUS is a Delaware corporation with its principal place of business in St. Louis, Missouri.

3. Defendant MANOOGIAN is a citizen and resident of Missouri. MANOOGIAN was an interim Chief Executive Officer and a Board Member on the Board of Directors of ASCLEPIUS at all relevant times.

4. Defendant BRIGHAM is a citizen and resident of Missouri. BRIGHAM was the President, Chairman of the Board of Directors, and Secretary for ASCLEPIUS at all relevant times. BRIGHAM was also head of Warson Capital Partners LLC ("WCP"), a St. Louis-based investment banking firm which was a creditor of ASCLEPIUS, at all relevant times.

5. Defendant LEVITT is a citizen and resident of New Jersey. LEVITT was the Treasurer and a Director of Asclepius at all relevant times. LEVITT was also a creditor of ASCLEPIUS through the JED Family Trust ("JED") at all relevant times.

6. Defendant CRAWFORD is a citizen and resident of Massachusetts. CRAWFORD was the Chief Medical Officer and a Board Member on the Board of Directors of Asclepius at all relevant times.

7. Defendant MACKAY is a citizen and resident of Massachusetts. MACKAY was a Board Member on the Board of Directors of Asclepius at all relevant times.

8. Defendant PETKEVICH is a citizen and resident of Maryland. PETKEVICH was a Board Member on the Board of Directors of Asclepius at all relevant times.

## VENUE

9. Venue is proper pursuant to 28 U.S.C. § 1331 which states that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

10. Furthermore, venue is proper pursuant to 28 U.S.C. § 1332(a)(1) and (c)(1) which states that "the district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states." 28 U.S.C. § 1332(c)(1) states that "for the purposes of this section and section 1441 of this title – a corporation shall be deemed to be a citizen of every state and foreign state by which it has been incorporated and the State or foreign state where it has its principle place of business … ."

11. The Plaintiff, DONA ANDREA, is incorporated under the laws of the State of Illinois, and has a principal place of business in the Cook County, State of Illinois.

12. Defendants are citizens of or incorporated in Missouri, New Jersey, Massachusetts, and Maryland.

13. An actual case or controversy has arisen between the parties.

14. DONA ANDREA have been injured by Defendants and have suffered damages in excess of $75,000.00 resulting therefrom.

## WAIVER OF JURY TRIAL

15. The Parties have waived the right to jury trial for the matters disputed in this Complaint. *See* Note Purchase and Security Agreement, § P.9.15., page 15-16, attached hereto as Exhibit A.

## FACTUAL BACKGROUND

16. Warson Capital Partners LLC (herein "WCP") is a St. Louis-based investment private equity firm. WCP is also a creditor in ASCLEPIUS.

17. WCP made investments in Warson Funding IX LLC (herein "Warson IX"), a special purpose entity created for the purpose of investing in Asclepius Laboratories Inc. f/k/a/ Parcell Laboratories Inc.

18. WCP made investments directly in ASCLEPIUS and WCP investments made direct payments to ASCLEPIUS's vendors on behalf of ASCLEPIUS.

19. On July 1, 2015, Brigham and Women's Hospital, Inc. (hereafter "BWH") granted Revised Patent License: BWH Agreement No. A110568.05 (the "License") to ASCLEPIUS. The License related to adult stem cell compositions and methods of identification and isolation. *See* Revised, Amended and Restated Exclusive Patent License Agreement, attached hereto as Exhibit B. BWH is a not-for-profit Massachusetts corporation and one of the founding members of Partners Healthcare, which is the largest healthcare provider in Massachusetts.

20. CRAWFORD and Baldev Vasir of ASCLEPIUS made some further discoveries beyond the License, which expanded the original intellectual property. These findings were filed under a provisional patent and these two employees were to assign those findings over to ASCLEPIUS. *See* Assignment, attached hereto as Exhibit C.

21. On January 4, 2016, Defendant MANOOGIAN, interim CEO of ASCLEPIUS, had given the Board of Directors of ASCLEPIUS a memorandum (the "2016 Memorandum") stating that WCP made undisclosed redemptions not authorized by ASCLEPIUS, of the WCP Investments by WCP's undisclosed diversion of third-party investor's funds contributed to Warson IX for the purpose of investing in ASCLEPIUS. *See* Asclepius Memorandum (herein "Memorandum"), attached hereto as Exhibit D.

22. In the 2016 Memorandum, MANOOGIAN outlined the following:

a) questionable financial transactions by WCP and Warson IX during the period of September 14, 2014 to June 4, 2015, which were undisclosed to ASCLEPIUS;

b) how WCP diverted investors' funds from ASCLEPIUS to them and outlined WCP's accounting, financial, and reporting weaknesses that led to this unethical and fraudulent diversion of funds; and

c) recommendations to ASCLEPIUS's Board of Directors on necessary actions and remedial steps to fix the questionable, inappropriate, and injurious actions to Company.

23. ASCLEPIUS's Board of Directors ignored MANOOGIAN's remediation plan.

24. Between September of 2015 and April of 2016, MANOOGIAN was using company funds for personal use and also kiting company checks. *See* Bank of America statements and deposit receipts, attached hereto as Exhibit E, and Lindell Bank statement, attached hereto as Exhibit F.

25. Prior to August of 2016, ASCLEPIUS was in default of its obligations to multiple creditors.

26. In August of 2016, MANOOGIAN approached and solicited Michael Board, owner of DONA ANDREA, to invest in or loan money to ASCLEPIUS.

27. MANOOGIAN represented to DONA ANDREA that ASCLEPIUS had a low proposed exit of $50,000,000 and high proposed exit at $200,000,000 and that the returns would be anywhere from four (4) times to twelve (12) times of the invested capital. *See* August 18, 2016 email correspondence attached hereto as Exhibit G.

28. MANOOGIAN represented to DONA ANDREA that ASCLEPIUS only needed a short term loan from a couple of investors, including DONA ANDREA, to keep the company operational before ASCLEPIUS finalized its big financing round, at which point investors could take their money out in accordance to the NOTE.

29. Prior to DONA ANDREA's investment, MANOOGIAN did not disclose to DONA ANDREA any of the information outlined in his 2016 Memorandum.

30. Prior to DONA ANDREA's investment, MANOOGIAN did not disclose to DONA ANDREA any of the defaults that ASCLEPIUS had.

31. On August 12, 2016, DONA ANDREA invested a principal amount of $42,500 with a twelve (12%) percent compounded annually interest rate into ASCLEPIUS and received a Promissory Note (the "NOTE") with a maturity date of November 30, 2016. *See* Promissory Note, attached hereto as Exhibit H.

32. The NOTE was issued pursuant to the terms of the Note and Warrant Purchase and Security Agreement ("NWPS Agreement") dated February 22, 2016 by ASCLEPIUS and each of the purchasers. *See* Exhibit H and Exhibit A.

33. DONA ANDREA agreed to be bound by the terms and conditions of the NWPS Agreement when it executed a Joinder Agreement for Additional Closings with ASCLEPIUS on August 12, 2016. *See* Joinder Agreement for Additional Closings, attached hereto as Exhibit I.

34. On August 12, 2016, ASCLEPIUS also granted to DONA ANDREA, the Warrant Holder, a Stock Purchase Warrant Agreement which expires on February 22, 2022 at 5:00pm Eastern Standard Time. *See* Stock Warrant Agreement, attached hereto as Exhibit J.

35. On August 18, 2016, MANOOGIAN sent an email to Michael Board confirming the representations made prior to the investment regarding the returns. *See* Exhibit G.

36. On November 2, 2016, MANOOGIAN began using ASCLEPIUS funds to rent an apartment without Board approval. *See* Addendum to Lease for Executive Apartment Agreement, attached hereto as Exhibit K.

6

37. On December 9, 2016, GMG 21 Strathmore Road, LLC (hereafter "GMG"), the landlord of the premises of ASCLEPIUS, sends its first Notice of Default to ASCLEPIUS. Neither DONA ANDREA nor any other Creditors were ever informed of this default. *See* Notice of Default, attached hereto as Exhibit L.

38. On February 2, 2017, DONA ANDREA emailed Defendant LEVITT and ASCLEPIUS corporate counsel, David Kantaros, notice to redeem its NOTE at maturity at the end of February.

39. Since then, DONA ANDREA has sent Defendants many written and email notices and demands to redeem the NOTE. To date, DONA ANDREA has not been paid back.

40. On March 7, 2017, BWH notified ASCLEPIUS that it was in violation of contract and in default, and ASCLEPIUS was given 30 days to send a mitigation plan and cure the issues. *See* BWH Notice of Default, attached hereto as Exhibit M.

41. In March of 2017, DONA ANDREA became aware of the BWH default letter through third-parties and requested a copy of the default letter from Defendants and for the company's response.

42. Defendants never sent DONA ANDREA a copy of the BWH default letter or the company's response.

43. On April 7, 2017, DONA ANDREA requests via email the mitigation plan as well as company financial records from the Defendants.

44. Defendants never supplied DONA ANDREA with either a mitigation plan or company financial records.

45. On April 7, 2017, DONA ANDREA was informed via telephone conference with Defendant BRIGHAM that Defendant MANOOGIAN had been fired. Plaintiff was informed that

MANOOGIAN had kited several checks and had rented an apartment using ASCLEPIUS without any Board approval.

46. During this phone conversation, Defendant BRIGHAM also informed DONA ANDREA that it will have the mitigation plan on April 9, 2017.

47. By April 10, 2017, DONA ANDREA had still not received a mitigation plan from Defendants and sent another email requesting the plan.

48. On April 11, 2017, Defendants sent an email to DONA ANDREA stating that the company filed their mitigation plan with BWH on April 7, 2017. Defendants also sent DONA ANDREA the unaudited financial records of the company.

49. On April 14, 2017, DONA ANDREA requested yet again from Defendant BRIGHAM the mitigation plan, audited company financial records, and the default letter from BWH.

50. On May 17, 2017, a Creditor Call was held in which the following creditors were in attendance: DONA ANDREA, Jim Whitney, Pam Layton, North Knox, Johnstone, and Defendants BRIGHAM and LEVITT.

51. During this call, the Creditors were informed that:

    a) Warson IX and JED waived all defaults on ASCLEPIUS as the requisite majority;

    b) Agreement terms with BHW were not met;

    c) ASCLEPIUS was not in default of their obligations to BWH;

    d) Warson IX and JED invested an additional $250,000 into ASCLEPIUS;

    e) new Notes were created for Warson IX and JED for $125,000 each; and

    f) $225,000 of the $250,000 invested by Warson IX and JED was already used to pay debts owed by the company, leaving only a remainder of $25,000.

52. None of the attending Creditors were previously informed of the issuance of the

new Notes and none had approved of the issuance of the new Notes.

53. On September 12, 2017, GMG sent its second notice that ASCLEPIUS is still in default. Creditors are finally informed of the GMG default.

54. On September 14, 2017, DONA ANDREA requests a list of all defaults, notices, and financials. DONA ANDREA never received any of the requested documents.

55. On January 17, 2018, MANOOGIAN informed the Board that LEVITT and BRIGHAM did not escrow money to cure the BWH license payments and that ASCLEPIUS otherwise:

    a) failed to keep the License granted by BWH;

    b) failed to convert the provisional patent, which would have expanded the intellectual property;

    c) failed to file 2016 and 2017 taxes;

    d) failed to pay their attorneys, CPAs, and Advisors;

    e) failed to act; and

    f) failed to notify creditors that their collateral was in jeopardy.

56. On April 24, 2018, an Order was entered by the Superior Court of the Commonwealth of Massachusetts attaching the ASCLEPIUS' bank accounts and assets to GMG. *See* Order, attached hereto as Exhibit N.

57. On May 18, 2018, MANOOGIAN notifies ASCLEPIUS that his group, BIDCO, is terminating the deal/term sheet.

58. On May 25, 2018, MANOOGIAN resigns as Chief Executive Officer.

59. On August 9, 2018, BWH officially terminated the licensing agreement, which is the collateral that ASCLEPIUS granted DONA ANDREA a security interest in.

9

**COUNT I**
**VIOLATION OF SECTION 10(b) OF THE SECURITIES**
**AND EXCHANGE ACT OF 1934**

60. DONA ANDREA re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 59 above, as though fully set forth herein, as Paragraph 60 of Count I.

61. On August 12, 2016, DONA ANDREA and ASCLEPIUS entered into an agreement, the NOTE, Joinder Agreement for Additional Closings dated August 12, 2016, Promissory Note dated August 12, 2016, and Stock Purchase Warrant dated August 12, 2016 (collectively, the "Agreements").

62. Prior to the execution of the Agreements, ASCLEPIUS falsely represented to DONA ANDREA that ASCLEPIUS:

   a) was in good financial standing and had no defaults;

   b) was in the process of raising money and is in good financial standing to be able to do an equity raise;

   c) had a low proposed exit of $50,000,000 and high proposed exit at $200,000,000 and that investors would have anywhere from four (4) times to twelve (12) times of invested capital from NOTE; and

   d) only needed a short term loan from a couple of investors, including DONA ANDREA, to keep the company operational before they finalize their big financing round at which point investors could take their money out in accordance to the NOTE.

63. ASCLEPIUS statements were false because prior to DONA ANDREA executing any agreement, ASCLEPIUS:

   a) Was in default to several creditors;

   b) Had committed a criminal fraudulent action of diverting prior investors' funds; and

10

    c) Had knowledge of its Chief Executive Officer kiting checks and using company funds for personal use;

64. ASCLEPIUS misrepresentations and/or omissions were material because DONA ANDREA would not have entered into any agreements with ACLEPIUS in the absence of the misrepresentations and/or omissions.

65. The misrepresentation made by ASCLEPIUS to DONA ANDREA were designed to induce and encouraged DONA ANDREA to invest and sign the Agreements.

66. DONA ANDREA would not have executed the Agreements under the terms if these inducements, promises and other misrepresentations had not been made by the Defendants.

67. DONA ANDREA would not have made any payments owed to Defendants pursuant to the NOTE if they had known Defendants were in default to several creditors, committed criminal fraudulent action of diverting prior investors' funds, and/or knowledge of ASCLEPIUS' Chief Executive Officer kiting checks preceding the execution of the NOTE.

68. As a result of Defendants misrepresentations and/or omissions of material facts, DONA ANDREA was damaged by the amount paid to Defendants pursuant to the NOTE in addition to damages it has sustained.

WHEREFORE DONA ANDREA seeks recovery of actual and compensatory damages, punitive damages, attorney's fees, and expenses and costs in excess of $75,000 for injuries caused by Defendants' fraudulent inducement and such other and further relief as this Court may deem just and proper or to which it may be entitled as a matter of law.

## COUNT II
## FRAUDULENT INDUCEMENT

69. DONA ANDREA re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 59 above, as though fully set forth herein, as Paragraph 69 of Count II.

70. On August 12, 2016, DONA ANDREA and ASCLEPIUS entered into an agreement, the NOTE, Joinder Agreement for Additional Closings dated August 12, 2016, Promissory Note dated August 12, 2016, and Stock Purchase Warrant dated August 12, 2016 (collectively, the "Agreements").

71. Prior to the execution of the Agreements, ASCLEPIUS falsely represented to DONA ANDREA that ASCLEPIUS:

    a) was in good financial standing and had no defaults;

    b) was in the process of raising money and is in good financial standing to be able to do an equity raise;

    c) had a low proposed exit of $50,000,000 and high proposed exit at $200,000,000 and that investors would have anywhere from four (4) times to twelve (12) times of invested capital from NOTE; and

    d) only needed a short term loan from a couple of investors, including DONA ANDREA, to keep the company operational before they finalize their big financing round at which point investors could take their money out in accordance to the NOTE.

72. ASCLEPIUS statements were false because prior to DONA ANDREA executing any agreement, ASCLEPIUS:

    a) Was in default to several creditors;

    b) Had committed a criminal fraudulent action of diverting prior investors' funds; and

    c) Had knowledge of its Chief Executive Officer kiting checks and using company funds for personal use;

73. ASCLEPIUS misrepresentations and omissions were material because DONA ANDREA would not have entered into any agreements with ACLEPIUS in the absence of the misrepresentations.

74. The misrepresentation made by ASCLEPIUS to DONA ANDREA were designed to induce and encouraged DONA ANDREA to invest and sign the Agreements.

75. DONA ANDREA would not have executed the Agreements under the terms if these inducements, promises and other misrepresentations had not been made by the Defendants.

76. DONA ANDREA would not have made any payments owed to Defendants pursuant to the NOTE if they had known Defendants were in default to several creditors, committed criminal fraudulent action of diverting prior investors' funds, and/or knowledge of ASCLEPIUS' Chief Executive Officer kiting checks preceding the execution of the NOTE.

77. As a result of Defendants misrepresentations and/or omission of material facts, DONA ANDREA was damaged by the amount paid to Defendants pursuant to the NOTE in addition to damages it has sustained.

WHEREFORE DONA ANDREA seeks recovery of actual and compensatory damages, punitive damages, attorney's fees, and expenses and costs in excess of $75,000 for injuries caused by Defendants' fraudulent inducement and such other and further relief as this Court may deem just and proper or to which it may be entitled as a matter of law.

## COUNT III
## BREACH OF CONTRACT

78. DONA ANDREA re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 59 above, as though fully set forth herein, as Paragraph 78 of Count III.

79. On August 12, 2016, DONA ANDREA and ASCLEPIUS entered into an agreement, the NOTE, Joinder Agreement for Additional Closings dated August 12, 2016, Promissory Note dated August 12, 2016, and Stock Purchase Warrant dated August 12, 2016 (collectively, the "Agreements").

80. DONA ANDREA performed all of its obligations under the NOTE.

81. ASCLEPIUS breached the Section 7.1 of the NOTE by failing to provide to DONA ANDREA final reviewed financial statements as of the end of such fiscal year of ASCLEPIUS prepared by independent certified accountants.

82. ASCLEPIUS breached the Section 7.2 of the NOTE by failing to provide to DONA ANDREA quarterly financial statements beginning with the quarter ended March 31, 2016, consisting of: (i) an unaudited income statement for such quarter, an unaudited statement of cash flows and an unaudited balance sheet as of the end of such quarter (including year-to-date information, as applicable), and (ii) such other financial and operational reports.

83. ASCLEPIUS breached the Section 7.7 of the NOTE by failing notify DONA ANDREA that BWH officially terminated the intellectual property license agreements, which are the collaterals that ASCLEPIUS granted DONA ANDREA a security interest in.

84. ASCLEPIUS breached the Section 7.8 of the NOTE by failing to maintain Directors and Officers Liability Insurance and other necessary insurances as required.

85. ASCLEPIUS breached the Section 7.3 of the NOTE by failing notify DONA ANDREA of default events that materially and adversely affect properties or affairs of the company, specifically when ASCLEPIUS defaulted on March 7, 2017 on an agreement with BWH.

86. ASCLEPIUS breached the Section 7.5 of the NOTE by failing to maintain complete and accurate books and financial records and denied DONA ANDREA the right to audit ASCLEPIUS's books and financial records as permitted in the NOTE.

87. ASCLEPIUS breached the Agreements by failing to pay DONA ANDREA the owed principal amount plus interest at the maturity date.

88. Even when ASCLEPIUS defaulted on the Agreements with DONA ANDREA, ASCLEPIUS failed to turn over the collateral.

WHEREFORE, DONA ANDREA seeks recovery of actual and compensatory damages arising from defendant's breach of contract, attorney's fees, expenses and costs in excess of $75,000, and such other and further relief as this Court may deem just and proper or to which it may be entitled as a matter of law.

## COUNT IV
## BREACH OF FIDUCIARY DUTY

89. DONA ANDREA re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 59 above, as though fully set forth herein, as Paragraph 89 of Count IV.

90. MOONIGAN, BRIGHAM, LEVITT, CRAWFORD, MACKAY, and PETKEVICH (collectively the "Board of Directors and Officers") owed a fiduciary duty to ASCLEPIUS.

91. The Board of Directors and Officers breached its fiduciary duty by failing to take action when alerted that WCP had diverted almost $500,000 of the ASCLEPIUS' investor funds to themselves.

92. The Board of Directors and Officers breached its fiduciary duty and its duty of care by failing to maintain ASCLEPIUS' License with BWH and failing to convert the provisional patents, which had significant value and were the creditors' collateral. ASCLEPIUS could not give DONA ANDREA the collateral upon default of the Agreements due to this breach.

93. The Board of Directors and Officers breached its fiduciary duty to inform DONA ANDREA of the notice of default by GMG, the Company's landlord, and the subsequent attachment of ASCLEPIUS' bank accounts by court judgment.

WHEREFORE, DONA ANDREA seeks recovery of actual and compensatory damages arising from defendant's breach of fiduciary duty, attorney's fees, expenses and costs in excess of $75,000 and such other and further relief as this Court may deem just and proper or to which it may be entitled as a matter of law.

Respectfully Submitted,

By: /s/ Peter C. Kim
One of the Attorneys for
Dona Andrea LLC.

Peter C. Kim
Michael J. Bishop
Litchfield Cavo, LLP
303 West Madison Street, Suite 300
Chicago, Illinois 60606
Telephone: (312) 781-6679
Facsimile: (312) 781-6630
Firm I.D. No.: 36351
E-Mail: kimp@litchfieldcavo.com
  bishopm@litchfieldcavo.com